IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TIFFANY COATS,                )
                              )
        Plaintiff,            )        NO. 3:20-cv-00298
                              )
    v.                        )        JUDGE RICHARDSON
                              )
DENIS MCDONOUGH,[1]           )
                              )
        Defendant.            )
                              )

## MEMORANDUM OPINION

Pending before the Court is Defendant's Partial Motion to Dismiss (Doc. No. 33, "Motion"). Plaintiff has filed a Response (Doc. No. 40). Defendant has filed a Reply (Doc. No. 44). The Motion is ripe for review.

For the reasons discussed, the Court will deny the Motion in part and grant it in part.

## BACKGROUND[2]

Plaintiff, Tiffany Coats, is a citizen of Rutherford County, Tennessee. (Doc. No. 30 at 2). Defendant, Denis McDonough, is the current Secretary of the Department of Veterans Affairs. (*Id.*). The current action stems from Plaintiff's employment at the VA Medical Center in Nashville,

---

[1]Plaintiff's Complaint is brought against the Secretary of Veterans Affairs in the Secretary's official capacity. Pursuant to Fed. R. Civ. P. 25(d), upon a change in the holder of the office at issue in an official-capacity case, the new individual holding the position is substituted as the defendant. McDonough became the new Secretary of Veteran's Affairs on February 9, 2021 and was automatically substituted as Defendant in this action.

[2]The facts set forth herein are alleged in Plaintiff's second amended complaint that was captioned "Amended Complaint" (Doc. No. 30, "operative Amended Complaint") and are accepted as true for purposes of the Motion.

Tennessee ("VA"). (*Id.* at 4). Plaintiff began working at the VA Medical Center on August 6, 2017 as a Supervisory Medical Support Assistant. (*Id.*). During this time, Plaintiff's first-line supervisor was Jennifer Lewis, a black woman. (*Id.* at 4-5). Plaintiff is white. (*Id.* at 5).

On October 17, 2018, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor, stating she was being subjected to race and gender discrimination and a hostile work environment. (*Id.*). After this contact, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination.[3] (*Id.* at 3). In January 2020, the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication issued a final order related to Plaintiff's complaint of discrimination, and informed Plaintiff she had the right to file a civil lawsuit. (*Id.*). Plaintiff filed the present action on April 9, 2020. (*Id.*). On April 14, 2020, Plaintiff requested leave under the Family and Medical Leave Act

---

[3]As noted, Plaintiff's operative Amended Complaint states that she "filed a charge with the Equal Employment Opportunity Commission." (Doc. No. 30 at 3). However, the Court believes this is an inaccurate statement of the process. As Plaintiff was employed at the VA, she was a federal employee. Federal employees are subject to different Title VII procedures than private employees. As explained by one district court,

> A federal employee who claims to have been the victim of discrimination under Title VII must first bring a grievance to the attention of an Equal Employment Opportunity ("EEO") counselor of his agency within 45 days of the alleged discriminatory act. If the matter cannot be resolved informally, the employee must file a formal complaint with the EEO officer within 15 days of receiving notice of the right to file such complaint. Upon notice of a final agency decision, the employee may either file an appeal to the Equal Employment Opportunity Commission ("EEOC") or a civil action in federal court. If the employee elects to file a civil action, he must do so within 90 days of receiving notice of the agency's final action, or no sooner than 181 days after filing his formal complaint if the agency has failed to render a decision.

*Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 880 (N.D. Ohio 2006), *aff'd*, 220 F. App'x 407 (6th Cir. 2007) (citing 29 C.F.R. §§ 1614.105 and 106). Because Plaintiff goes on to state that she received a final order from the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication, this suggests she followed correct procedure and filed a complaint with the agency's EEO officer, rather than the EEOC.

("FMLA"). (*Id.*). Plaintiff was informed that Defendant had approved her request for "intermittent absences beginning 4/13/2020 through 4/12/2021 for up to 480 hours." (*Id.* at 3-4). When Plaintiff made a request for leave under her FMLA entitlement in May 2020, Defendant denied this request and wrote Plaintiff as "AWOL" or "absent without pay." (*Id.* at 4). Plaintiff filed another complaint with the EEOC on June 9, 2020 related to her FMLA denial.[4] (*Id.*). At that time, the EEOC investigator instructed Plaintiff to add the factual substance of her complaint to her current federal case. (*Id.*). Plaintiff thereafter filed an "Amended Complaint" (Doc. No. 10) and, thereafter, a seconded "Amended Complaint" (Doc. No. 30), *i.e.*, the operative Amended Complaint, which contains additional claims under the Rehabilitation Act and the Americans with Disabilities Amendments Act ("ADAA").

      Plaintiff's present action contains several claims. The First Cause of Action is for "Discrimination Based on Race and Hostile Work Environment under Title VII of the Civil Rights Act of 1964."[5] (*Id.* at 8). Plaintiff's Second Cause of Action is for "Reprisal under Title VII of the Civil Rights Act of 1964, as amended, Retaliation, 42 U.S.C. A. § 2000e-3and 42 U.S.C. § 1981a." (*Id.* at 10). The Third (and final) Cause of Action is for "Failure to Provide an Accommodation pursuant to the Rehabilitation Act, The [American with Disabilities] Amendments Act, 29 U.S.C. 791 and 42 US.C. 12112(b)(5) and retaliation." (*Id.* at 11). Defendant requests the Court to dismiss some of these claims under 12(b)(6), arguing the following: (1) some incidents Plaintiff alleges as evidence of race discrimination and hostile work environment should be dismissed for failure to

---

[4] Consistent with the Court's observations in a footnote above, the Court construes this statement to suggest that Plaintiff contacted the same EEO counselor with whom she had filed her previous discrimination and hostile work environment complaints, rather than the EEOC.

[5] As discussed later, the Court will construe this as two distinct claims: one for race discrimination and one for hostile work environment.

exhaust administrative remedies, (2) incidents as to which Plaintiff conceded, during the EEO investigation, race was not a factor should be dismissed in relation to the race discrimination claim, and (3) Plaintiff's failure-to-accommodate claim under the Rehabilitation Act/ADAA should be dismissed for failure to exhaust administrative remedies, or in the alternative for failure to state a claim upon which relief could be granted.

## LEGAL STANDARD

Defendant's Motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For purposes of a motion to dismiss brought under Rule 12(b)(6), the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, i.e., allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

Importantly, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable on a Rule 12(b)(6) motion to dismiss.[6]

---

[6] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell*

A plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she might ultimately bear under *McDonnell Douglas*. This is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff is not required to plead what would qualify as a *prima facie* case for purposes of *McDonnell Douglas. See, e.g., Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."). The Court recently explained this in some detail in resolving a motion to dismiss a plaintiff's Tennessee Human Rights Act claims:

> But since this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas. Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). "[T]he precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of

---

> *Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence . . . . Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then mut prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).

This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a prima facie case as required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.

*Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020) (Richardson, J.). So as noted in *Keys*, *McDonnell Douglas* ultimately may not apply at all in a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination,[7] rather than indirect evidence of discrimination (which is what *McDonnell*

---

[7] "[D]irect evidence is evidence which, if believed, 'requires the conclusion that unlawful discrimination was at least a motivating factor.'" *Bartlik v. U.S. Dep't of Labor*, 73 F.3d 100, 103 n.5 (6th Cir. 1996) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995)). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). When there is direct evidence, "the existence of unlawful discrimination is 'patent.'" *Id.* "Whatever the strength of the evidence, it is not 'direct' evidence if [it] admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact." *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005) (quoting *Norbuta v. Loctite Corp.*, 1 Fed. Appx. 305, 313 (6th Cir. 2001)). If an inference is required to draw from the evidence the conclusion that an employer was animose against a protected class—for example, if an inference is required to reach the conclusion that a comment refers to a protected class or the plaintiff's membership in a protected class—then the evidence is not direct evidence. *Zivkovic v. Juniper Networks, Inc.*, 450 F. Supp. 2d 815, 825 (N.D. Ohio 2006). "[T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race], but also that the employer acted on that predisposition." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).

---

*Douglas* deals with). And even if *McDonnell Douglas* would apply at later stages of the case, it cannot sensibly be applied at the pleading stage, and so its requirement of a showing of a *prima facie* case must not be applied at the pleadings stage.

## DISCUSSION

### A. The Court will not consider the EEO Investigatory Report or the Affidavits attached to the Motion.

As noted above, the Court is limited in what documents it may consider in determining a 12(b)(6) motion to dismiss without converting the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). In his Motion, Defendant relies on multiple documents outside of the pleadings, including the EEO Investigatory Report from June 30, 2019 and declarations from Timothy Eckwood (an EEO Counselor for the VA) and Kelly Dempsey (a timekeeper at the Nashville VA Hospital). (Doc. No. 34 at 11 and 17). A document not attached to the complaint may be considered if it is "referred to in the pleadings and is integral to the [plaintiff's] claims." *Commercial Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-336 (6th Cir. 2007). Defendant argues Plaintiff "explicitly refers to the administrative process . . . and alleges exhaustion of administrative remedies," so the "administrative record" (meaning the EEO Investigatory Report) should be able to be considered. (Doc. No. 44 at 2-3). The Court disagrees.

While Plaintiff does make reference in her operative Amended Complaint to an EEO contact in October 2018 and to receiving a "Final Order" notifying her she could file suit in federal court (Doc. No. 30 at 5), she never explicitly refers to an EEO Investigatory Report or even to the investigation process. Moreover, although filing an EEO complaint before filing in federal court is an administrative requirement of Title VII and is integral to Plaintiff's operative Amended Complaint in that regard, the actual contents of the Investigatory Report are not integral to her claims. Because the Court finds the EEO Investigatory Report is neither implicitly or explicitly referred to in Plaintiff's operative Amended

Complaint nor "integral" to her claims, the Court must decline to consider the contents of the Report in resolving this Motion. Similarly, the defense-proffered declarations of Mr. Eckwood and Ms. Dempsey are, unsurprisingly, neither referred to in the operative Amended Complaint nor integral to Plaintiff's claims, and thus they cannot be considered on the instant Motion.

**B.**   **Plaintiff's First Cause of Action, for race discrimination and hostile work environment, is not subject to dismissal for failure to administratively exhaust, because the claims actually were administratively exhausted.**

Regarding Plaintiff's First Cause of Action, Defendant says that some of the alleged incidents constituting evidence of race discrimination or hostile work environment were not administratively exhausted.[8] Motions to dismiss for failure to exhaust administrative remedies are appropriately brought under Rule 12(b)(6) because they are "condition[s] precedent" to filing in federal court, rather than "jurisdictional prerequisites" (which would instead implicate Rule 12(b)(1)). *See McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008). Defendant specifically takes issue with Plaintiff's reliance on: (a) 11 of the 27 alleged incidents listed in

---

[8] It is not entirely clear from Plaintiff's Amended Complaint whether she was intending in her First Cause of Action to bring a claim for race discrimination (under Title VII) distinct from and in addition to a claim for hostile work environment (also under Title VII), or whether instead she intended only to use the incidents of race discrimination as evidence to support her claim for hostile work environment. However, Defendant construes Plaintiff's First Cause of Action as asserting two distinct claims, namely, one for race discrimination under Title VII and one for hostile work environment under Title VII. In her Response, Plaintiff did not disagree with this construction, so the Court adopts it.

paragraph 22 of Plaintiff's operative Amended Complaint;[9] and (b) the performance review alleged in paragraphs 26(c) and (d) of the operative Amended Complaint.[10]

As this Court has previously noted,

> Title VII of the Civil Rights Act is the exclusive judicial remedy for claims of discrimination (based upon race, color, religion, sex and national origin) in federal employment. *See Burnette v. Wilkie*, Case No. 1:18-cv-1179, 2019 WL 4452388, at * 7 (N.D. Ohio Sept. 17, 2019) (citing *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003)). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.' " *Id.* . . . .
> As explained above, an aggrieved federal employee must bring any claim of discrimination to an EEO counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1). If the complaint is not resolved informally, the employee must file any formal complaint within 15 days of the receipt of notice of her right to file a formal EEO discrimination complaint. 29 C.F.R. § 1614.105(d); *Burnette*, 2019 WL 4452388, at * 7. If the federal employee receives an adverse final determination from the federal agency, she may then file suit in a federal court or request a hearing before the Equal Employment Opportunity Commission ("EEOC"). 29 C.F.R. § 1614.407(a). Any such lawsuit or EEOC complaint must be filed within 90 days of receipt of the final agency action. *Id.*

*Bryant v. Wilkie*, No. 3:18-cv-00104, 2020 WL 836547, at *2 (M.D. Tenn. Feb. 20, 2020).

Plaintiff's operative Amended Complaint makes clear that she filed a complaint with an EEO counselor at the VA and received a final decision from the agency.[11] Additionally, before

---

[9] Plaintiff alleges that these 27 incidents (listed, respective, in paragraphs 27(a) through 27(aa)), were "the bases for discrimination resulting a [sic] hostile work environment."

[10] Plaintiff alleges that in this performance review, she received the lowest possible rating and that this was one way in which "Defendant has discriminated . . . against Plaintiff because of her race." (Doc. No. 30 at 9).

[11] The Amended Complaint actually states, "Within 180 days of the occurrence of the acts of which Plaintiff complains, charges of employment discrimination were filed with the Equal Employment Opportunity Commission (EEOC) by Plaintiff against Defendant" and "On or about January 8, 2020, Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication issued a FINAL ORDER notifying Plaintiff of her right to file a civil lawsuit within 90 days." (Doc. No. 30 at 3). But, as the Court discussed in a footnote above, her implication that

listing out incidents in ¶ 22, Plaintiff alleges that she contacted an EEO counselor complaining of discrimination and hostile work environment. (*Id.* at 5). Though it is not made explicit, reading the operative Amended Complaint in the light most favorable to Plaintiff, as required on a 12(b)(6) motion to dismiss, the Court interprets the listed incidents in ¶ 22 as being incidents Plaintiff brought to the attention of the EEO counselor on October 17, 2018. (*Id.*). Defendant's assertion of an alleged failure to exhaust as to some of these incidents rests on the alleged absence of these incidents in the EEO Investigatory Report, which (as discussed above) is a document that the Court will not consider in deciding the Motion. Taking the facts alleged in the operative Amended Complaint as true, as is required on a motion to dismiss, and excluding proffered information it cannot consider, the Court must find that Plaintiff has not failed to exhaust her First Cause of Action in any respect.

Moreover, to the extent Plaintiff is utilizing these incidents as facts illustrating a hostile work environment, there is no requirement that each distinct incident be individually exhausted. Arguing otherwise, Defendant cites *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101 (2002), which states, "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. [Plaintiff] can only file a charge to cover discrete acts that occurred within the appropriate time period." 536 U.S. 101, 114 (2002). However, *Morgan* also explicitly notes, "Hostile environment claims are different in kind from

---

a 180-day deadline was relevant in the case of Plaintiff (a federal employee) is inaccurate under the law, and her implication that charges were (inappropriately) filed with the EEOC appears inaccurate in light of her other allegations. Because the rest of Plaintiff's Amended Complaint suggests that she timely followed appropriate procedure and Defendant acknowledges Plaintiff successfully exhausted her administrative remedies (to at least some discrimination incidents) (Doc. No. 34 at 15), the Court will not construe these off-base allegations as a reason to find at this juncture that Plaintiff failed to exhaust her discrimination and hostile work environment claims.

discrete acts. Their very nature involves repeated conduct . . . Such claims are based on the cumulative effect of individual acts." *Id.* at 115. The Court goes on to say:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice. . . . It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117. Though *Morgan* stated this principle in deciding whether the applicable alleged incidents of hostile work environment in that case were individually subject to the statute of limitations, the same principle applies in deciding whether alleged specific incident of hostile work environment are individually subject to the requirement of administrative exhaustion: a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' " and so "it does not matter . . . that some of the component acts of the [alleged] hostile work environment" were not administratively exhausted, as long as the overarching claim of hostile work environment (the alleged "unlawful employment practice" at issue) was administratively exhausted. Thus, even were the Court to consider the EEO Investigatory Report on this Motion and find no mention therein of the incidents challenged by Defendant—such that Defendant would claim that they are "unexhausted"—those incidents nevertheless would survive as eligible support for Plaintiff's hostile work environment claim.

**C.** **The  Plaintiff's race discrimination claim included within the First Cause of Action is not subject to dismissal on the grounds that Plaintiff conceded that race was not a factor in the alleged incidents, because Plaintiff actually conceded no such thing.**

To the extent that Plaintiff is alleging two distinct claims under Title VII, one for race discrimination and one for hostile work environment, Defendant moves to dismiss Plaintiff's race discrimination claim in particular for failure to state a claim. Defendant argues that certain incidents Plaintiff alleges as evidence of race discrimination should be dismissed because Plaintiff

had previously "conceded that race was *not* a factor" in those incidents. (Doc. No. 34 at 19 (emphasis in original)). Although Defendant speaks in terms of *dismissal* of certain incidents, the Court would not "dismiss" discrete factual allegations (or "dismiss" alleged events) that underly a claim pled in a complaint.[12] It appears that what Defendant is really requesting is for the Court to exclude certain incidents from consideration in determining whether Plaintiff has stated a valid claim for race discrimination in her First Cause of Action.

Defendant's argument fails for multiple reasons. First, the argument relies on evidence of Plaintiff's concessions that race was not a factor that are allegedly contained in the EEO Investigatory Report, and the Court has already determined it cannot consider the Report in assessing this Motion. Second, Defendant's ultimate argument here—built on the just-mentioned flawed premise that certain incidents of alleged discrimination were conceded—is that Plaintiff (due to her supposed inability to rely on those incidents for purposes of attempting to state a claim) fails to plausibly allege an indirect-evidence *prima facie* case of discrimination. But as noted above, *McDonnell Douglas* is not the standard applicable on a 12(b)(6) motion to dismiss; the issue is not whether the plaintiff has adequately alleged a *prima facie* case of discrimination under *McDonnell Douglas*. Instead, a plaintiff need only "satisfy the plausibility requirement for a motion to dismiss." *Holland v. LG Elecs. U.S.A., Inc.*, No. 3:20-CV-00706, 2021 WL 130529, at *3 (M.D. Tenn. Jan. 14, 2021). Though the Court will further discuss below whether Plaintiff's race-discrimination claims satisfy the pleading requirements that actually are applicable, the Defendant's particular arguments here are without merit and not grounds for dismissal of Plaintiff's race-discrimination claim.

---

[12] Generally speaking, the function of a Rule 12(b)(6) motion is to request dismissal of one or more *claims*, and courts accordingly decide whether to dismiss such *claim(s)*.

**D.** **Defendant's Motion will be granted as to Plaintiff's Third Cause of Action for retaliation allegedly accomplished by failure to provide accommodation, as the claim has not been appropriately exhausted.**

Similar to Plaintiff's First Cause of Action, Plaintiff's Third Cause of Action is not entirely clear. The heading reads, "Failure to Provide an Accommodation pursuant to the Rehabilitation Act, The ADA Amendments Act, 29 U.S.C. 791 and 42 US.C. 12112(b)(5) and retaliation."[13] Based on the actual language of the Third Cause of Action itself, the Court is unsure whether this cause of action actually is: (a) two claims, *i.e.*, one for failure to provide accommodation under the Rehabilitation Act and one for retaliation under the Rehabilitation Act; or (b) a single claim, for retaliation under the Rehabilitation Act in the form of failure to provide an accommodation. In her response to Defendant's Motion, Plaintiff refers to the claim as "her retaliation claim of defendant's failure to provide an accommodation." (Doc. No. 41 at 6). This language suggests that the latter interpretation is correct and that the Third Cause of Action is meant to be a singular claim for retaliation under the Rehabilitation Act, with the alleged act of retaliation being Defendant's failure to accommodate; if Plaintiff meant otherwise, she failed in her obligation to make that clear.

In the Motion, Defendant makes two arguments in support of dismissal of the Third Cause of Action. First, Defendant argues that the claims giving rise to the Third Cause of Action have not been administratively exhausted because they were never "presented to an EEO Counselor."

---

[13] Although Plaintiff's Amended Complaint states that her Third Cause of Action is brought under both the Rehabilitation Act and the ADA, this cannot actually be the case. "The Rehabilitation Act is a federal employee's exclusive remedy for employment related discrimination based on a disability." *Plautz v. Potter*, 156 F App'x 812, 815 (6th Cir. 2005). Because Plaintiff's claims stem from her employment with the VA, she would be a federal employee subject to the Rehabilitation Act (and not also to the ADA), and the Court will construe her cause of action as such. However, "[t]here is no significant difference between the substantive standards of the ADA and the Rehabilitation Act." *Id.* at 816. Because the Sixth Circuit treats claims under the Rehabilitation Act as it would claims under the ADA, the Court will consider case law decided in the context of ADA claims and Rehabilitation Act claims. *See Doe v. Salvation Army in U.S.*, 531 F.3d 355, 357 (6th Cir. 2008).

(Doc. No. 34 at 15). Second, Defendant argues that Plaintiff cannot establish a *prima facie* case for failure to accommodate under the Rehabilitation Act because she was not improperly denied her FMLA leave. (*Id.* at 21). To the first argument, Plaintiff responds that she did not need to administratively exhaust this claim as "Defendant denied her FMLA leave and wrote Plaintiff up as AWOL" in retaliation for her previous EEO charge. (Doc. Nos. 41 at 6 and 41-1 at 2). To the second argument, she responds that a failure to provide FMLA leave can constitute a failure to accommodate under the Rehabilitation Act. (*Id.* at 8-9).

The Rehabilitation Act forbids discrimination against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment. *See Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998) (citing to 42 U.S.C. § 12101 *et seq.* and noting the ADA and Rehabilitation Act have parallel protections). The Rehabilitation Act also provides a cognizable cause of action for retaliation by referencing the retaliation provisions of the ADA and saying, "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA]." 29 U.S.C. § 794(d). In turn, the ADA provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). *See also A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696 (6th Cir. 2013) ("Both the ADA and [the Rehabilitation Act] prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts."). In simpler terms, this means that a retaliation claim under the Rehabilitation Act must stem from an individual engaging in activity *protected under the Rehabilitation Act*.

As with Title VII claims, "[e]xhaustion of administrative remedies is a prerequisite to seeking judicial remedies against federal employers pursuant to the Rehabilitation Act." *Ryan v. McDonald*, 191 F. Supp. 3d 729, 740 (N.D. Ohio 2016). However, retaliation claims "are generally excepted from this [exhaustion] requirement because they usually arise after the filing of the EEOC charge," or in the case of a federal employee under the Rehabilitation Act, after the filing of a discrimination complaint with the agency. *Abeita v. TransAmerica Mailings, Inc*., 159 F.3d 246 (6th Cir. 1998). But a retaliation claim will be excepted only if it arises "from filing the EEOC charge itself." *Oliver v. Titlemax*, 149 F. Supp. 3d 857, 864 (E.D. Tenn. 2016). This exception "has been held to apply to retaliation for filing a federal lawsuit following an administrative charge." *Yuhe Diamba Wembi v. Metro Air Serv.*, 195 . Supp. 3d 957, 973-73 (N.D. Ill. 2016); *see also Kirkland v. Buffalo Bd. of Ed*., 622 F.2d 1066, 1068 (2d Cir. 1980) (holding that a second right to sue letter was not required when the claim was retaliation for plaintiff's "initiation of litigation" alleging race discrimination); *Muwonge v. Eisenberg*, No. 07-C-0733, 2008 WL 753898, at *13 n.8 (E.D. Wis. Mar. 19, 2008) ("Although [plaintiff] is not alleging retaliation for filing his EEOC charge, the same reasoning applies to his allegation of retaliation for filing this suit.").

However, the Rehabilitation Act's retaliation cause of action does not create a "catchall statute . . . for any workplace retaliation." As noted above, it protects individuals from retaliation only "for engaging in, or aiding another who engages in, activity covered by the [Rehabilitation Act]." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). While Plaintiff's operative Amended Complaint does not clearly state the basis for her Rehabilitation Act retaliation claim, it appears that Plaintiff is arguing either that Defendant retaliated against her in response to her filing her original EEO complaint (Doc. No. 41 at 6) or that Defendant retaliated against her in response

to her filing this action in federal court after receiving a Final Order from the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication. (Doc. No. 30 at 3). Plaintiff's operative Amended Complaint states that Plaintiff's EEO charge contained only claims of race and sex discrimination and reprisal (matters covered by Title VII), (Doc. No. 30 at 5), and her original Complaint in this action contained only claims arising under Title VII. (Doc. No. 1 at 5-6). While protected activity under the Rehabilitation Act includes bringing EEO charges or a federal action for disability discrimination, it would not include bringing EEO charges or a federal action related to race discrimination, sex discrimination, or hostile work environment, which fall under the auspices of Title VII retaliation. *See* 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter* [*i.e.*, Title VII]") (emphasis added). So given the other allegations in the operative Amended Complaint, Plaintiff cannot possibly ground a retaliation claim under the *Rehabilitation Act* upon her lodging of her EEO charges or the original complaint that initiated the instant lawsuit.

As the Court understands Plaintiff's operative Amended Complaint and Response, she contends that she does not have to administratively exhaust her Rehabilitation Act retaliation claim.[14] Unfortunately for Plaintiff, based on the facts that she herself alleges, she does not have a

---

[14] Plaintiff's Response proposes an additional argument that Plaintiff can bring a judicial complaint involving claims that were not explicitly included in the EEO complaint, as long as they were "reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (quoting *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)). However, this principle, known as the "expected scope of investigation test," applies to facts alleging retaliation that occurred prior to the filing of an EEO complaint and should have been included in the complaint, but for some reason were not. *See Dixon*, 392 F.3d at 217. As explained in *Dixon*, "The determinative inquiry in this case, therefore, is whether [Plaintiff] alleged

*Rehabilitation Act* retaliation claim. Her argument for excepting her retaliation claim from the exhaustion requirement is, essentially, either that her retaliation claim arises from the filing of an agency EEO charge or that her retaliation claim arises from the filing of the original complaint in the instant federal lawsuit. True, where a plaintiff (like Plaintiff) alleges retaliation for filing EEO charges or a federal lawsuit that claimed discrimination in violation of Title VII but not discrimination in violation of the Rehabilitation Act, a retaliation claim may be excepted from exhaustion requirements to the extent that it is brought under *Title VII*. But in the Court's view, it makes no sense to except, from the requirement of administrative exhaustion, a retaliation claim asserted under the *Rehabilitation Act* based on the prior filing of a *Title VII* agency charge or lawsuit.

Plaintiff is master of her own complaint. *See Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005). And here, Plaintiff chose to assert her retaliation claim under the Rehabilitation Act, even though the alleged protected conduct was the assertion of claims under Title VII. Given her choice to plead her retaliation claim that way, she needs to show an exception to the applicable exhaustion requirement, *i.e.*, the requirement to exhaust a retaliation claim under the Rehabilitation Act. But Plaintiff has not shown, and the Court does not accept, that the general requirement to exhaust a Rehabilitation Act retaliation claim is excused based on the fact that the

---

sufficient facts in his [EEO complaint] to put the EEOC on notice of his retaliation claim." *Id.* Because the incident of retaliation Plaintiff alleges occurred *after* her original EEO complaint, there is no scenario in which she could have "alleged sufficient facts" to put the VA on notice of her present Rehabilitation Act retaliation claim.

retaliation was prompted by the filing of agency charges or a lawsuit having nothing to do with the Rehabilitation Act.[15]

In summary, it is clear that, as Defendant asserts, Plaintiff failed to exhaust the retaliation claim she has filed as a *Rehabilitation Act* retaliation claim. Plaintiff's only possible excuse for not doing so—an exception to the exhaustion requirement where the adverse employment action is in retaliation for the plaintiff's filing an agency EEO charge or federal discrimination lawsuit—in the Court's view is inapplicable where, as here, the filing had nothing to do with the Rehabilitation Act. Given the dearth of authority to support or refute the Court's view on this narrow issue—a dearth that is unsurprising given that it is probably rare that a plaintiff sues under the anti-retaliation provisions of one anti-discrimination law based on the filing of complaints

---

[15] Along the same lines, it appears possible that Plaintiff has failed to state a valid claim for retaliation under the Rehabilitation Act, for each of two reasons. First, Plaintiff does not allege that the alleged adverse employment action was in retaliation for exercising a right protected by the *Rehabilitation Act*, as is required to state such a claim. Second, Plaintiff's alleged "adverse employment action," a requirement of a retaliation claim, may not qualify as such, even under the relatively broad construction of that term in the context of retaliation claims. "In the retaliation context [of the ADA], the term 'adverse employment action' encompasses more than just actions that affect 'the terms, conditions or status of employment'. It includes any conduct 'that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Wyatt v. Nissan N. Am., Inc*., 999 F.3d 400, 419 (6th Cir. 2021) (quoting *Hawkins v. Anheuser-Busch, Inc*., 517 F.3d 321, 345 (6th Cir. 2008)). In this case, it appears that Plaintiff is alleging the adverse action Defendant took against her is failure to accommodate by denying her FMLA leave. This Court has previously determined, "the mere failure to accommodate under the ADA does not constitute retaliation." *Wyatt v. Nissan North America, Inc*., No. 3:17-CV-1545, 2019 WL 6682197, at *16 (M.D. Tenn. Dec. 6, 2019), *aff'd in part, rev'd in part and remanded*, 999 F.3d 400 (6th Cir. 2021). Allowing a plaintiff to file an ADA/Rehabilitation Act retaliation claim based solely on the adverse action of "defendant's alleged failure to accommodate" would be "improper" and allow "plaintiffs . . . to double dip by asserting both ADA failure-to-accommodate and retaliation claims." *See White v. Buckeye Fire Equip. Co*., No. 3:17-CV-404-MOC-DSC, 2018 WL 2304048, at *6 (W.D.N.C. May 21, 2018) (quotations omitted); *see also Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) ("A failure to accommodate cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim."). The Court need not and does not resolve either of these issues, however.

alleging the violation of a different anti-discrimination law—one could argue that the Court should come out the other way on this issue. But Plaintiff has not done so; she has done nothing to explain why the exception to the exhaustion requirement should apply to save a Rehabilitation Act retaliation claim where, as here, the exception would be based on her earlier-filed complaints that have nothing to do with the Rehabilitation Act. This is fatal to her bid to avoid the exhaustion requirement, because the Sixth Circuit has strongly indicated (at least in other kinds of discrimination cases) that the burden is on the plaintiff to explain why she should be excused from the requirement to exhaust. *See, e.g.*, *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) (Title VII case); *Willis v. Morris*, No. 95-5107, 1995 WL 613642, *1 (6th Cir. Oct. 18, 1995) (Age Discrimination in Employment and ADA case); *cf. Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir. 2002) ("[T]he [Individuals with Disabilities Education Act's] exhaustion requirement remains the general rule, and a party who seeks to invoke an exemption bears the burden of showing that it applies."); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (same).

Plaintiff has failed to provide any such showing or explanation that accounts for the unique circumstances of this case. Accordingly, her retaliation claim under the Rehabilitation Act will be dismissed for failure to exhaust administrative remedies.

Notably, such a dismissal is *without* prejudice, even considering that (as has been made ever more clear in recent years) exhaustion is not a prerequisite to subject-matter jurisdiction for the district court. *See, e.g.*, *Willis*, 1995 WL 613642, *1; *Hoover*, 30 F. App'x at 513.[16] Having

---

[16] As the Seventh Circuit has put it, "[d]ismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to exhaust." *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir.2002). Here, one can well imagine that perhaps it is too late to exhaust a claim of retaliation under the Rehabilitation Act, but the Court expressly declines to opine definitely on that topic.

accepted Defendant's failure-to-exhaust argument, the Court turns briefly to Defendant's second argument for dismissal of the Third Cause of Action; this argument is not moot, because if accepted, it would mandate dismissal *with* prejudice. This argument relies on Ms. Dempsey's Affidavit to prove that the denial of Plaintiff's FMLA leave request was not improper. (Doc. No. 34 at 21-22). But such reliance is futile because, as explained above, the Court cannot consider any of the Affidavits attached to Defendant's Motion. Thus, the Third Cause of Action will be dismissed only without prejudice, and not with prejudice.

E.  **The Court may dismiss Plaintiff's race discrimination claim *sua sponte* unless Plaintiff files an appropriately amended complaint responding to the Court's concerns.**

As noted above, Defendant's arguments for dismissing Plaintiff's race discrimination claim are unpersuasive. However, these claims may nonetheless face dismissal. Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual ... because of such individual's race, color, religion, sex, or national origin." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2020) (quoting 42 U.S.C. § 2000e–2(a)(1)). The elements of an indirect-evidence *prima facie* case of Title VII discrimination are: (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position in question; and (4) plaintiff was treated differently from similarly situated individuals outside of their protected class.[17] *See Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004). Although, as noted above, Plaintiff is not required to "establish a prima facie case at [the pleading/motion to dismiss] stage, she must still allege sufficient factual content

---

[17] Alternatively, a plaintiff may satisfy the fourth element of a *prima facie* race discrimination claim by showing that she was discharged from her position and replaced by someone outside of the protected class. *See Shazor v. Pro. Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir. 2014). But Plaintiff does not allege any such replacement to implicate this alternative.

to make a claim for relief plausible*." Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 722 (E.D. Mich. 2021). A plaintiff alleging a Title VII race discrimination claim "must plead facts which allow the court to infer that the [adverse employment action] related to the plaintiff's race." *Wiseman v. Spectrum Healthcare Resource*, No. 221CV02042TLPCGC, 2021 WL 4399718, at *3 (W.D. Tenn. Sept. 27, 2021) (quoting *Flynn v. Memphis Pathology Lab'y (AEL)*, No. 2:19-2882-CV-SHL-TMP, 2020 WL 5801087, at *3 (W.D. Tenn. Sept. 29, 2020)).

Plaintiff's operative Amended Complaint alleges various incidents that Plaintiff says constituted race discrimination against her. The Court has grouped them into the following categories for ease of review: (1) not receiving adequate guidance or assistance from her supervisor, Ms. Lewis (Doc. No. 30 at ¶ 22 (a-g), (i-k), (x-y)); (2) being required to engage in work and duties that black supervisors were not required to perform (*Id.* ¶ 22(h), (n), ¶ 26(b)); (3) receiving a low performance review (*Id.* ¶ 22 (o-p), ¶ 26(c-d)); and (4) being denied FMLA leave/being written up as AWOL for taking leave. (*Id.* ¶ 22 (q-w)). An adverse employment action is "a materially adverse change in the terms and conditions of a plaintiff's employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010). "A 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action." *Id.* (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir.2004)). Instead, an adverse employment action usually requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White*, 364 F.3d at 798 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Activities that do not constitute "an adverse employment action" under Title VII include: being denied supplemental training; negative performance reviews that have no demonstrable effect on wages or salary; being

placed on paid leave pending an internal investigation; and having changed/increased job responsibilities if rank and pay remain the same. *See respectively Young v. CSL Plasma Inc.*, No. 15-cv-10080, 2016 WL 1259103, at * 3 (E.D. Mich. Mar. 31, 2016); *Jones v. St. Jude Medical S.C., Inc.*, 823 F. Supp. 2d 699, 745 (S.D. Ohio 2011); *Peltier v. U.S.*, 388 F.3d 984, 988 (6th Cir. 2004); and *Blackburn v. Shelby County*, 770 F. Supp. 2d 896, 922 (W.D. Tenn. 2011). In sum, an adverse employment action in the context of Title VII discrimination, "must create a 'serious and material' change to the terms, conditions, or privileges of the employee's employment." *Sands v. Jackson State Cmty. Coll.*, No. 1–03–1333–T–An., 2006 WL 1174469, at *5 (W.D. Tenn. April 29, 2006) (quoting *Davis v. Town of Lake Park Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001) *overruled on other grounds by Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)).

In this case, the Court is unsure whether Plaintiff has alleged that any adverse employment action (actually qualifying as such under the case law laid out above) occurred as a result of racial discrimination against her. As discussed above, the Court notes that Plaintiff has alleged various incidents—*i.e.*, actions or inaction on the part of Defendant—that she believes constituted race discrimination against her; these may be construed as alleged adverse employment actions. However, the Court cannot see how those incidents created "serious and material changes to the terms, conditions, or privileges" of Plaintiff's employment, as required to constitute an adverse employment action for purposes of a Title VII race discrimination claim. *Sand*, 2006 WL 1174469, at *5 (quotation omitted). Because of this, the Court is considering dismissing Plaintiff's Title VII race discrimination cause of action for failure to state a claim under Rule 12(b)(6). True, Defendant did not raise this as an argument in his Motion to Dismiss.[18] But the Court has the authority to

---

[18] Defendant's argument related to Plaintiff's race discrimination claim rests solely on Defendant's contention that Plaintiff "conceded" race was not a factor in certain incidents, and thus could not

dismiss for failure to state a claim *sua sponte* so long as "plaintiffs have been given adequate notice and an opportunity to amend." *O'Lear v. Miller*, 222 F. Supp. 862, 863 (E.D. Mich. 2002). Thus, to the extent that the Court would properly be deemed to be dismissing for failure to state a claim "*sua sponte*" if it were to dismiss for failure to adequately allege a cognizable adverse employment action for purposes of her race discrimination claim, it needs to give Plaintiff an opportunity to amend her complaint to "allege sufficient factual content to make a claim for relief [under a Title VII race discrimination theory] plausible." *Blick*, 516 F. Supp at 722.

The Court is generally hesitant to consider dismissing a claim *sua sponte* in this kind of manner; the reality, however, is that without clarification as to Plaintiff's theory on her race discrimination claim (if, as the Court is constrained to conclude at this stage, she is truly alleging a distinct race discrimination claim under Title VII and not just a hostile work environment claim based on incidents of racial animus), the Court's subsequent adjudication of the First Cause of Action will be severely impaired. So, the Court must cut to the chase and insist that Plaintiff provide clarity regarding, and support for, her position on these points. The Court is not dismissing Plaintiff's race discrimination claim at the present time. However, Plaintiff will be provided an opportunity to submit an amended complaint that makes clear: (1) whether she is alleging Title VII race discrimination as a claim separate and distinct from her Title VII hostile work environment claim, and if so (2) what adverse employment action(s) she alleges she suffered as a result of the alleged discrimination.

---

satisfy the *McDonnell Douglas prima facie* case requirement—an argument that, as discussed above, the Court finds unpersuasive.

**CONCLUSION**

For the reasons indicated herein, the Defendant's Motion will be **GRANTED in part and DENIED in part**. Defendant's Motion will be granted insofar as it seeks to dismiss Plaintiff's Third Cause of Action for a failure to exhaust her Rehabilitation Act retaliation claim. The Motion will be denied as to all arguments for dismissal of Plaintiff's First Cause of Action for race discrimination and hostile work environment. Plaintiff may at her option file an amended complaint addressing the Court's concerns regarding her race discrimination claim in her First Cause of Action; as should be apparent from the above discussion, dismissal of the race discrimination claim in the First Cause of Action is likely if no such amended complaint is filed. Plaintiff must file any amended complaint addressing the identified issues by December 23, 2021, whereafter the Court will decide (based on the complaint operative at that time), whether to proceed with *sua sponte* dismissal of the race discrimination claim under Rule 12(b)(6) for failure to state a claim.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE